**Luis Roberto SOSA, Plaintiff–Appellant,**

v.

**Harry HIRAOKA, Dorothy Smith, Warren Kessler, John Burke, Patrick Patterson, William Smith, Leslie Thonesen and Ron Manfredi, individually and as members of the Board of Trustees of Defendant State Center Community College District, et al., Defendants–Appellees.**

No. 88–15752.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1990.

Decided Dec. 6, 1990.

Carolyn D. Phillips, Milrod & Phillips, Fresno, Cal., for plaintiff-appellant.

Joseph P. Zampi, San Diego, Cal., for defendants-appellees.

Before CHOY, TANG and BEEZER, Circuit Judges.

TANG, Circuit Judge:

Professor Luis Roberto Sosa sued his employer, State Center Community College District, its trustees (Harry Hiraoka, *et al.*), and five college administrators (Clyde McCully, Arthur Ellish, Gerald Stokle, William Stewart, and Ernest Leach) for discriminating against him in the terms and conditions of his employment because of his national origin, Mexican–American. Sosa alleged violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2(a). The district court dismissed Sosa's complaint and entered judgment for the defendants. On appeal, we ·reverse.

## FACTUAL BACKGROUND

Sosa alleged the following facts in his First Amended Complaint:

In 1979, Fresno City College, a unit of defendant State Center Community College District, ("District"), hired Dr. Sosa as an instructor of Sociology and Human Services. Sosa achieved tenure in 1979. Also in 1979, Sosa served as spokesperson for "La Raza Faculty" of Fresno City College, appearing before the District's Board of Trustees to respond to defendant trustee Hiraoka's remarks that Hispanic students are "incapable of learning" and that programs for Hispanic students were a waste. In 1982, Sosa again appeared before the Board of Trustees to protest the underrepresentation of Hispanics in the faculty and administration of the District's colleges.

In April of 1984, defendants Arthur Ellish, Dean of Instruction, and Clyde McCully, then President of the College, denied Sosa's request for leave and expenses to attend an academic conference. The denial was unprecedented in the District. In June of 1984, Dean Ellish, President McCully, and defendant Gerald Stokle, Associate Dean of the Social Sciences Division, instituted an "augmented evaluation" of Sosa requiring a burdensome series of meetings and written performance evaluations to be completed in 1985. Associate Dean Stokle, Dean Ellish, and President McCully stated that "negative" student evaluations of Sosa justified the unusual evaluation process, though Sosa's student evaluations were 99.2% favorable.

In April 1985, Sosa's colleagues in the Fresno City College Department of Sociology/Human Services/Women's Studies nominated Sosa as their first choice for Department Chair. In August 1985,

Sosa learned that Dean Ellish and President McCully had vetoed Sosa's promotion, naming the Department's second choice, a white male, as chair.

In December 1985, without the assistance of counsel, Sosa filed a charge of discrimination on the basis of national origin with the Equal Employment Opportunity Commission ("EEOC"). He named the defendant District as respondent.

In March of 1986, Sosa's Department colleagues again nominated him for Chair. Associate Dean Stokle recommended against Sosa's promotion, and Dean Ellish agreed. A few months later, Sosa's colleagues nominated him as Chair a third time. Dean Ellish again vetoed the promotion.

In November 1986, after investigating Sosa's discrimination charge, the EEOC issued a "Reasonable Cause Determination" that the District's "augmented evaluation" of Sosa and its denial of Sosa's promotion to Department Chair violated Title VII.

Also in November of 1986, Sosa discovered that his salary was lower than his experience justified under applicable District salary schedules, and had been since the District hired him. Sosa repeatedly notified the District's administration about the discrepancy, but obtained no relief.

In May of 1987, after conciliation efforts had failed, the EEOC issued Sosa a "right to sue" letter. On August 17, 1987, Sosa filed a complaint in federal district court alleging civil rights violations.

In the fall of 1987, Dean Ellish and Associate Dean Stokle solicited six negative statements from Sosa's students about his teaching. Dean Ellish then recommended discipline of Sosa to defendant Ernest Leach, the new College President. President Leach made the same recommendation to defendant William Stewart, Chancellor of the District, who submitted the recommendation to the District's Board of Trustees. On December 1, 1987, the Board issued Sosa a "formal notice of unprofessional conduct" based on the six student statements.

In February 1988, Sosa's colleagues nominated him for the fourth time for Department Chair. Associate Dean Stokle again recommended against Sosa's promotion to chair.

## PROCEDURAL BACKGROUND

On August 23, 1988, Sosa filed his First Amended Complaint which added allegations of the District's administrators', and trustees' discriminatory conduct against Sosa occurring after Sosa had filed his EEOC charge and first complaint. The First Amended Complaint also alleged two legal grounds for relief: Count One alleged denial of equal employment and promotional opportunities in a continuing violation of Sosa's Title VII rights; Count Two alleged violation of Sosa's civil rights under 42 U.S.C. § 1981. Defendant District, administrators, and trustees responded with a motion to dismiss or to strike Sosa's First Amended Complaint.

On November 9, 1988, the district court granted the motion to dismiss. *See Sosa v. Hiraoka,* 714 F.Supp. 1100 (E.D.Cal.1988). The district court held that the statute of limitations deprived it of jurisdiction over Sosa's § 1981 count. Sosa does not appeal the final judgment against him on the § 1981 count. The district court also dismissed the Title VII count, holding that: (1) the statute of limitations, 42 U.S.C. § 2000e–5(e), deprives the court of jurisdiction over certain claims of discrimination occurring prior to Sosa's filing of his EEOC charge; (2) Sosa had not alleged a continuing violation of Title VII sufficient to preserve such claims from the statute of limitations; (3) Sosa's failure to include certain claims in his EEOC charge occurring before and after the filing of his charge deprives the court of jurisdiction over those claims; (4) Sosa's failure to name any defendants except the District in his EEOC charge deprives the court of jurisdiction over those individual defendants; (5) Sosa failed to state a claim for relief by failing to plead with specificity the grounds for

liability of each named defendant; and (6) the principle of sovereign immunity for governmental entities and officials precludes Sosa's action. The district court's dismissal disposed of the case, so its judgment was final and appealable. *See Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984).

## STANDARD OF REVIEW

We review dismissal of a complaint for failure to state a claim de novo. *Kruso v. International Tel. & Tel.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). When reviewing dismissal of a complaint, we accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Love v. United States,* 871 F.2d 1488, 1491 (9th Cir.1989). Dismissal of a complaint is improper "unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986)), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Moreover, we review issues of subject matter jurisdiction de novo. *United States v. Layton,* 855 F.2d 1388, 1394 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

## DISCUSSION

### I. Statute of Limitations

Title VII provides that claimants such as Sosa must file a charge of discrimination with the EEOC within 180 days of an act of discrimination.[1] The 180–day limit serves as a judicial statute of limitations as well, generally barring subsequent suit on discriminatory incidents occurring prior to the 180–day period. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). In this case, Sosa learned that Dean Ellish and President McCully had first denied him

promotion to Department Chair on or about August 15, 1985, well within 180 days of his filing with the EEOC on December 15, 1985.

Sosa alleged two other acts of discrimination in his First Amended Complaint, however, occurring before the 180–day limit; first, the denial of leave and travel expenses for attendance at an academic conference in April 1984; and second, the "augmented evaluation" process, initiated in June of 1984 and completed in May of 1985. The district court held that the statute of limitations bars these earlier allegations. We disagree.

Allegations of conduct occurring prior to the 180–day period are actionable if Sosa can show that they are part of a "continuing violation" of Sosa's Title VII rights. Under the continuing violation doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). We apply the continuing violation doctrine because "the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period." *Id.* Thus, if Sosa can show that the augmented evaluation and the denial of conference leave and expenses were part of a "systematic policy of discrimination," then those acts evidencing that policy are actionable. Moreover, Sosa may establish a continuing violation "not only by demonstrating ... [an employer] wide policy or practice, but also by demonstrating a series of related acts against a single individual;" that is, against Sosa alone. *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989) (continuing violation doctrine in 42 U.S.C. § 1983 claims).

---

1. The district court and the parties refer to the 300–day limitation in the statute which applies to claimants who file with state civil rights agencies before filing with the EEOC. 42 U.S.C. § 2000e–5(e). Because Sosa filed only with the EEOC and not with any state agency, the 180–day limitation applies to his case.

The district court rejected the applicability of the continuing violation doctrine to Sosa's case with the conclusion that Sosa had not "alleged a pattern or practice of discrimination which would preclude the untimely allegations from being barred." *Sosa*, 714 F.Supp. at 1106. In his complaint, however, Sosa alleged both: 1) the legal theory of a continuing violation, and 2) facts constituting a series of acts against him manifesting a policy and practice to harass and to discriminate against him on the basis of his national origin.

Sosa's First Amended Complaint indeed alleges a series of discriminatory acts by the District, its administrators, and trustees starting in 1982 with Sosa's identification—as a Mexican–American and spokesperson—with Hispanic academic concerns. The series of acts alleged continued through the trustees' censure of Sosa for "unprofessional conduct" in 1988. Further, all the acts Sosa alleged are plausibly related as acts of discrimination against Sosa because of his identification as a Mexican–American. Sosa filed an EEOC discrimination charge on the refusal to promote him to Department Chair in 1985. Sosa thus satisfied the requirement that he timely file with the EEOC on some discriminatory act evidencing the continuing violation or policy of discrimination against him. *See Williams*, 665 F.2d at 924. Because Sosa thus sufficiently alleged a continuing violation, we reverse dismissal of allegations in his complaint as time-barred.

II. Jurisdiction Over Allegations and Defendants Specified in the Complaint But Not Specified in the EEOC Charge

A. *Allegations Not Specified in the EEOC Charge*

Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies. Therefore "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green*, 883 F.2d at 1475–76 (quoting *Brown v. Puget Sound Elec. Ap-*

*prenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985)).

In Sosa's case, the district court decided that all of Sosa's allegations occurring before the time limit for filing the EEOC charge, including his service as a spokesperson for Hispanic faculty and students, the augmented evaluation, and the denial of conference leave and expenses, failed the "like or reasonably related" test. Further, the district court decided that all of Sosa's allegations occurring after the EEOC issued its Reasonable Cause Determination in November 1986 also failed the test. These allegations include Sosa's discovery in 1986 that he has received a salary incommensurate with his experience since his hiring, the trustees' censure of him for unprofessional conduct in 1987, and the fourth refusal to promote him to Department Chair in 1988. The district court therefore dismissed these allegations for lack of jurisdiction. We disagree with the district court.

■ The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation. *Green*, 883 F.2d at 1476. We therefore must examine proceedings before the EEOC to determine the scope of federal court jurisdiction in Sosa's case. In analyzing Sosa's EEOC charge, we must construe the charge liberally. *Id.* Further, we must inquire "whether the original EEOC investigation would have encompassed the additional charges" made in the court complaint but not included in the EEOC charge itself. *Id.* In short, the jurisdiction for Sosa's court action is not limited to the actual EEOC investigation, but can include the scope of an "'EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* (quoting *Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 n. 3 (9th Cir.1975) (emphasis added)). We conduct this inquiry into allegations occurring not only before, but also after the filing of

Sosa's EEOC charge. *See, e.g., Chung v. Pomona Valley Community Hosp.*, 667 F.2d 788, 792 (9th Cir.1982) (denial of promotion occurring after filing of EEOC charge may be adjudicated along with other Title VII claims). From this inquiry, we conclude that all of Sosa's allegations are sufficiently "like or reasonably related to" the allegations contained in Sosa's EEOC charge to establish federal court jurisdiction and to withstand the District's motion for dismissal.

In his EEOC charge, Sosa alleged not only denial of his promotion to Department Chair, but also that the District "through its Administrators has subjected me [Sosa] to intimidation, harassment and disparate treatment with respect to terms and conditions of employment." Sosa further specifically alleged in his charge that:

> In addition to the above, I believe that Respondent [District] and its Administrators, *have engaged in a pattern and practice of retaliating against me*, because I have previously filed discrimination charges/complaints against the Respondent and its Administrators.

(Emphasis added.) Under our standard of review of the scope of EEOC charges, Sosa's charge of harassment and retaliation for complaints of discrimination on their face reasonably encompass all of the allegations the district court dismissed.

When investigating harassment and retaliation against Sosa, the EEOC could reasonably have looked into Sosa's identification with Hispanic concerns as a cause for retaliation and have considered the augmented evaluation and denial of conference leave and expenses as incidents of retaliation. Further, an EEOC investigation of harassment and retaliation could likely have encompassed the trustees' censure of

Sosa for unprofessional conduct and the further refusals to promote Sosa.[2]

Sosa's allegation of a discriminatory salary schedule is not related to the retaliation claim because the discriminatory schedule commenced with Sosa's hiring. Nonetheless, Sosa also alleged in his EEOC charge an underlying complaint of disparate treatment in the terms and conditions of his employment because of his national origin. Sosa's claim of unequal pay may therefore also be reasonably related to his EEOC charge. The EEOC could not have investigated the claim only because Sosa did not discover the inequality until the same month the EEOC issued its Reasonable Cause Determination. We conclude, then, that Sosa's unequal pay claim was also sufficiently within the scope of his EEOC charge to withstand the District's motion to dismiss. Moreover, the district court should have permitted proceedings on the unequal pay claim as part of a continuing violation actionable before both the EEOC and district court.

The District, administrators, and trustees object that Sosa's EEOC charge insufficiently alleged a continuing violation, and so it too is beyond the district court's jurisdiction. Sosa's EEOC charge, however, expressly alleged a "pattern and practice" of retaliation discrimination, indicating an allegation of a continuing violation. Moreover, Sosa's charge alleged a course of "intimidation, harassment and disparate treatment with respect to terms and conditions of employment." Even where, unlike Sosa, claimants have failed to allege a continuing violation theory specifically in their EEOC charge, we have permitted suit on a continuing violation theory. *See Chung*, 667 F.2d at 790. In this case, Sosa's allegation of a continuing violation in his EEOC

---

2. As we have stated, our examination of allegations included in Sosa's complaint which occurred after the filing of his EEOC charge—and therefore were not specified in the charge—is the same as our examination of charges occurring before the filing of the charge but not specified in the charge. In both instances " 'the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated' " if " 'claims are *not* so closely related that agency action would be redundant.' " *Green*, 883 F.2d

at 1476 (quoting *Brown*, 732 F.2d at 730 (emphasis in the original)). As we have held, all of Sosa's allegations are sufficiently related on their face, making dismissal at this stage of the proceedings improper. Further EEOC action on Sosa's claim might well have been redundant. Indeed, we note that the EEOC issued a Reasonable Cause Determination that the District had unlawfully discriminated against Sosa in the ways he alleged in his charge.

charge was sufficient for federal court jurisdiction.

The District, administrators, and trustees argue further, however, that Sosa must have alleged in his EEOC charge not the theory of a continuing violation, but "specific discriminatory acts to substantiate a pattern of discrimination." This argument relies on our *Chung* holding where we excused Chung's failure to allege a continuing violation theory in his EEOC charge because he had alleged sufficient facts to evidence a pattern of discrimination. *Chung,* 667 F.2d at 790.

The rationale for permitting suit on a continuing violation theory evidenced but not specifically alleged in an EEOC charge, however, applies equally to permitting Sosa's suit on a continuing violation theory alleged but not wholly evidenced in his EEOC charge. In both cases, the " 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.' " *Id.* (quoting *Kaplan,* 525 F.2d at 1359). Further, in both cases, the EEOC charge " 'does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts.' " *Id.* (quoting *Kaplan,* 525 F.2d at 1359). Under these principles of EEOC charge construction, Sosa's allegations in his EEOC charge—of a course of intimidation, harassment, and disparate treatment; of a pattern of retaliation discrimination; of the refusal to promote him; and that he had lodged other "discrimination charges/complaints"—are together sufficient to have apprised the EEOC of all discriminatory acts Sosa subsequently alleged as part of a continuing violation in his First Amended Complaint. To demand that Title VII claimants allege more than Sosa did in his charge to assure eventual federal court jurisdiction " 'would falsify the [Civil Rights] Act's hopes and ambitions' " of providing a process lay people can use effectively to resolve discrimination complaints. *Id.* (quoting *Kaplan,* 525 F.2d at 1359).

Because all of the acts Sosa alleged in his First Amended Complaint are on their face like or reasonably related to the allegations in his EEOC charge, including the allegation of a continuing violation, the district court should not have dismissed Sosa's complaint for lack of jurisdiction. Here, as in *Chung,* further proceedings are necessary to determine whether allegations occurring before and after Sosa's EEOC charge are sufficiently related to the charge to entitle Sosa to relief. *See Chung,* 667 F.2d at 792. We therefore reverse the district court's dismissal of these allegations as premature.

### B. Defendants Not Named in the EEOC Charge

Sosa named the District as the "Respondent" in his EEOC charge and alleged that the District acted "through its Administrators" in discriminating against him. In his First Amended Complaint, Sosa named not only the District as a defendant, but also 1) District administrators involved in denying him promotion to Department Chair (appellees Dean Ellish, Associate Dean Stokle, President McCully, and President Leach); 2) appellee Chancellor Stewart who participated in the trustees' censure of Sosa for unprofessional conduct after the EEOC had issued its Reasonable Cause Determination; and 3) all of the District's trustees (appellees Hiraoka, D. Smith, Kessler, Burke, Patterson, W. Smith, Thoneson, and Manfredi) who also participated in Sosa's censure. The district court dismissed all of Sosa's claims against the individually-named District administrators and trustees because Sosa had "failed to affirmatively plead" that each individual defendant had "requisite notice or opportunity" to respond to Sosa's claims before the EEOC. *Sosa,* 714 F.Supp. at 1107.

 The district court correctly identified the general rule that Title VII claimants may sue only those named in the EEOC charge because only they had an opportunity to respond to charges during the administrative proceeding. *See* 2 A. Larson, *Employment Discrimination,* § 49.11(c)(2) (1990). Nonetheless, "Title

VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims." *Wrighten v. Metropolitan Hosp.*, 726 F.2d 1346, 1352 (9th Cir.1984). Further, where the EEOC or defendants themselves "should have anticipated" that the claimant would name those defendants in a Title VII suit, the court has jurisdiction over those defendants even though they were not named in the EEOC charge. *Chung*, 667 F.2d at 792.

### 1. Administrators Ellish, Stokle, McCully, and Leach:

In Sosa's case, Sosa specifically alleged that all the administrators he named as defendants participated in the acts—denials of promotion—giving rise to his EEOC charge. The administrators, therefore, should have anticipated becoming defendants in a subsequent suit. The district court erred in dismissing claims against them. *See Chung*, 667 F.2d at 792 (district court erred in dismissing claims against doctors not named in EEOC charge, but who participated in denial of promotions). Moreover, as we have held, Sosa's allegation of discrimination by censure occurring after the EEOC charge was also reasonably related to his EEOC charge of continuing violations. The administrators involved in the censure were also involved in the other allegations made in the EEOC charge, and so they are subject to suit in federal court.

### 2. Chancellor Stewart and Trustees:

Sosa alleged that the individually-named trustees and Chancellor Stewart discriminated against him by censuring him for unprofessional conduct after the EEOC had issued its Reasonable Cause Determination. Sosa has not alleged, as he did against the administrators, that the trustees and Chancellor Stewart discriminated against him before they censured him two years after the Reasonable Cause Determination. The district court therefore applied the general rule—that those not named in an EEOC charge may not be named in a subsequent

court action—to preclude Sosa from suing these defendants.

Three other well-established "exceptions" to the general rule may apply to Sosa's case, however. First, if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are "substantially identical parties," suit may proceed against the unnamed party. 2 A. Larson at § 49.11(c)(2). Second, suit may proceed if the EEOC could have inferred that the unnamed party violated Title VII. *Id.* Third, if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings, then suit may proceed against the unnamed party. *Id.* As Professor Larson explains:

> Courts are particularly likely to invoke one of these exceptions when the initial EEOC charge was filed without the assistance of counsel, since the charging party may not understand the need to name all parties in the charge, or may be unable to appreciate the separate legal identities of, for instance, a corporation and its officers.

*Id.* In analyzing the applicability of these exceptions, we note first that the underlying policy obtains in Sosa's case. Sosa did in fact file his EEOC charge without assistance of counsel. Second, we note that Sosa may be able to develop facts concerning Chancellor Stewart's and the trustee's involvement in Title VII violations and the EEOC investigation and conciliation process sufficient to retain them as defendants in his suit.

Sosa specifically alleged Chancellor Stewart had received actual notice of Sosa's EEOC charge in December of 1985. The notice and participation exception may therefore apply to Chancellor Stewart. It appears at this stage of the proceedings, then, that Sosa can indeed allege a set of facts against Chancellor Stewart upon which relief can be granted. *See Love*, 871 F.2d at 1491. Dismissal of Sosa's claims against Chancellor Stewart was therefore error.

Moreover, we have previously applied the exception for "substantially identical" parties when in *Chung* we permitted

suit against doctors not named in the EEOC charge and whose only apparent role in denial of promotions was as directors of the hospital named in the charge. *See Chung,* 667 F.2d at 790, 792; *see also Kaplan,* 525 F.2d at 1359 (international union was subject to Title VII suit where EEOC charge identified only the union local as a respondent). In Sosa's case, the trustees govern the District, the entity Sosa named as respondent in his EEOC charge, just as the director-doctors governed the hospital named as respondent in Chung's EEOC charge. *See* Cal.Educ.Code § 72200. Therefore, the trustees and the District could well be "substantially identical parties," thus exposing the trustees to Sosa's court action. The district court therefore erred in dismissing Sosa's claims against the individually-named trustees.

### III. Failure to Plead with Sufficient Specificity

■ The district court held as a further ground for dismissal of Sosa's First Amended Complaint that he had "failed to plead with the requisite particularity that each and every defendant has unlawfully discriminated against him." *Sosa,* 714 F.Supp. at 1107. We reject the district court's holding on the specificity of Sosa's pleading as both unprecedented in our circuit's cases and as unjustified in this instance.

To justify the dismissal of Sosa's complaint, the district court relied on cases where civil rights claimants alleged broad, vague, or conclusory claims. *See, e.g., Kennedy v. H & M Landing, Inc.,* 529 F.2d 987, 989 (9th Cir.1976) ("Nowhere in his complaint does the plaintiff identify the civil right allegedly invaded ..."). Such cases are inapplicable here, as review of Sosa's First Amended Complaint shows.

Instead, Sosa's First Amended Complaint fully satisfies our only requirement, to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8.

Our recitation of facts in this opinion, drawn from Sosa's First Amended Complaint, shows that Sosa pleaded specific allegations against specific defendants. Sosa identified in his First Amended Complaint the role each District administrator played in unlawfully denying him promotion to Chair. Sosa also identified the role of Chancellor Stewart and the District's trustees in censuring Sosa for unprofessional conduct, an allegation properly construed as unlawful retaliation discrimination. The district court therefore erred in dismissing Sosa's First Amended Complaint for lack of specificity.

### IV. Sovereign Immunity

■ While it is unclear, it appears the district court held that California state law immunizing the District, its administrators, and its trustees from suit for exercise of their discretionary duties also immunizes them from Sosa's Title VII action. *See* Cal.Gov't Code §§ 815.2(b), 820.2, 820.9. The district court reached this startling conclusion by analogizing Sosa's action to 42 U.S.C. § 1983 actions under which state officials are liable only when acting under the color of state law. It is plain, however, that state laws conferring immunity on government entities and officials cannot thwart Title VII actions against them.

First, the law of immunities under 42 U.S.C. § 1983 does not control determination of potential state law immunities under Title VII.[3] Unlike § 1983, Title VII contains no threshold qualification of liability for suit that officials act "under the

---

**3.** We note that the Supreme Court has recently held that state law immunities have no force against § 1983 suits where the state law immunity purports to provide immunity "over and above those already provided in § 1983." *Howlett v. Rose,* —— U.S. ——, ——, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990). In *Howlett* the Supreme Court reiterated a longstanding principle which applies equally to the District's assertion of state law immunity in Sosa's case: " 'A

construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.' " *Id.* at ——, 110 S.Ct. at 2443 (quoting *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980)).

color of" state law. Further, in Title VII itself Congress has expressly defined those persons and entities subject to suit under Title VII. 42 U.S.C. § 2000e(a). On the other hand, courts have had to define over a prolonged period who may be liable under § 1983. *See, e.g., Monell v. New York Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Indeed, in 1972 Congress amended Title VII specifically to subject states and their subdivisions to Title VII actions for unlawful discrimination. *See* 42 U.S.C. § 2000e(a); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449–450, 96 S.Ct. 2666, 2668–2669, 49 L.Ed.2d 614 (1976). The Supreme Court subsequently considered whether the Eleventh Amendment protects states, their subdivisions, and their officers from suit under Title VII despite the 1972 amendments. In *Fitzpatrick v. Bitzer*, the Supreme Court reasoned that section 5 of the Fourteenth Amendment authorizing Congress to enact legislation implementing the Fourteenth Amendment authorized Congress to enact Title VII. *Id.* at 456–57, 96 S.Ct. at 2671–72. The Court then held that the Eleventh Amendment does not protect states, their subdivisions, or their officers from Title VII suits:

> When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitu-

tional Amendment [the Fourteenth] whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

*Id.* at 456, 96 S.Ct. at 2671.

The *Fitzpatrick* Court's holding thus precludes California from immunizing itself, its subdivisions, or its officials against Title VII suits by virtue of the Eleventh Amendment. Accordingly, we reverse the district court on this issue as well.[4]

## V. Attorney Fees

■■■ Sosa seeks an award of attorney fees for this appeal under 42 U.S.C. § 2000e–5(k). Although Sosa has prevailed in this appeal and has established he is entitled to trial upon remand, he has not yet prevailed on the merits of any claims. We conclude, therefore, that an award of attorney fees is now premature. *See Proctor v. Consolidated Freightways Corp.*, 795 F.2d 1472, 1478–79 (9th Cir.1986). Upon remand, the district court should entertain Sosa's petition for an award of attorney fees at the appropriate time. *See Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1449–50 (9th Cir.1990)

---

**4.** The District, its administrators, and trustees seem to argue that even without authority from the Eleventh Amendment, California immunity laws may somehow override Congress's express extension of Title VII liability to states, their subdivisions, and officers. This argument seems to echo the Florida court's holding which the *Howlett* court rejected in no uncertain terms:

> [A]s to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common law heritage. If we were to uphold the immunity claim in this case, every State would have the same opportunity to extend the mantle of sovereign immunity to 'persons' who would otherwise be subject to § 1983 liability. States would then be free to nullify for their own people the legislative decisions that Congress has made on behalf of all the People.

*Howlett,* — U.S. at —, 110 S.Ct. at 2447.

The defendants' argument may narrow to whether Title VII preempts the California state law immunities. In *California Fed. Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), the Supreme Court considered whether provisions of Title VII preempted state law, and observed:

> [F]ederal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs ... because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 281, 107 S.Ct. at 689 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). State immunity laws stand as such obstacles to Congress's evident purpose in authorizing Title VII suits against states, state subdivisions, and state officials, that Title VII must preempt state immunity laws.

(claimant entitled to attorney fees on appeal where she prevailed on the merits in district court).

## CONCLUSION

We reverse dismissal of Sosa's complaint and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

