**Mary COUNTS, Plaintiff,**

**v.**

**Janet RENO, Defendant.**

**Civ. No. 96–00400 ACK.**

United States District Court,
D. Hawai'i.

Nov. 13, 1996.

Norman K.K. Lau, Radius & Lau, Honolulu, HI, Richard L. Swick, Swick & Shapiro, P.C., Washington, DC, for Mary Counts.

Mary Counts, Alexandria, VA, pro se.

Theodore G. Meeker, United States Attorneys Office, Honolulu, HI, Bruce R. Hegyi, U.S. Attorney's Office, Washington, DC, Anne M. Gulyassy, David M. Glass, Department of Justice Civil Division, Washington, DC, for Janet Reno.

### ORDER DENYING DEFENDANT'S MOTION FOR JUDGEMENT ON THE PLEADINGS OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT

KAY, Chief Judge.

### BACKGROUND

Plaintiff Mary Counts ("Plaintiff") brings this employment discrimination suit against Defendant Janet Reno, Attorney General for the United States, (hereinafter "Government"). Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, that the Federal Bureau of Investigation ("FBI") engaged in gender discrimination and retaliation against her. In the instant motion before the Court, the Government seeks judgement on the pleadings or in the alternative summary judgement on grounds that Plaintiff's claims are time-barred. Plaintiff filed an opposition to this motion, to which the Government filed a reply. A hearing on this matter was held on October 28, 1996.

### FACTS

This suit stems from Plaintiff's employment with the FBI. In 1982 Plaintiff was hired by the FBI as a Special Agent. She worked in the FBI's Washington, D.C. office and various offices across the nation until she transferred to the Honolulu office in June of 1991. As of October 1991 Plaintiff worked in the Honolulu office's Violent Crimes/Major Drug Offender Unit ("Violent Crimes Squad") and as the FBI's media coordinator. In addition from that date until June of 1993 Plaintiff acted as the Relief Supervisor for the Violent Crimes Squad. In that capacity, in 1991 Plaintiff served as Acting Supervisor of the Squad for a month when a vacancy temporarily arose in the permanent supervisor position. The Relief Supervisor position is not permanent but is rotated annually among qualified supervisors. The FBI's "career board" periodically ranks supervisors qualified for this position, and in 1992 the Honolulu career board gave Plaintiff the second highest ranking out of 5 candidates.

The discriminatory conduct of which Plaintiff complains traces back to an altercation in June of 1993 between Plaintiff and her supervisor, SSA Popolano. The dispute arose when Plaintiff arrested certain bank robbery suspects without first notifying Popolano in accordance with FBI policy. When Popolano discovered this he allegedly spoke very abusively to Plaintiff and threatened to write up the incident in her personnel file. Popolano also ordered Plaintiff to utilize the SWAT team on all future arrests. Plaintiff asserts this requirement had never been imposed on any male agent in the office.

In accordance with FBI policy for resolving employment disputes Plaintiff brought the incident to the attention of the FBI's Equal Employment Opportunity ("EEO") Counselor, Agent Lowell. The Government contends Plaintiff's discussions with Lowell were purely informal. Lowell did not issue Plaintiff a Notice of Right to File Complaint (hereinafter "notice of right-to-file") per the administrative regulations. Such a notice would have entitled (and required) Plaintiff to file an administrative complaint within 15 days of the notice. According to the Government, EEO Counselor Lowell did not issue this notice because he believed the matter had been resolved in Plaintiff's favor. The Government contends that both Lowell and Jim Freeman, the Special Agent in Charge of the Honolulu Field Office, agreed that Popolano had acted inappropriately. They apparently encouraged Plaintiff to challenge Popo-

lano's allegations by writing a memo to put in her personnel file in response to the memo which Popolano had written about her. In addition apparently they arranged that Popolano's memo did not go into Plaintiff's personnel file. Moreover, Lowell told Plaintiff and/or Plaintiff's husband, also an FBI agent, that Freeman "chewed out" Popolano for his actions.

Plaintiff also brought Popolano's conduct to the attention of ASAC Girardi. According to Plaintiff, Girardi blamed her for damaging Popolano's career and would not speak with her for several weeks. Apparently Freeman "chewed out" Girardi for this.

The same month in which Plaintiff spoke to Lowell and to Girardi, Plaintiff's term as Relief Supervisor coincidentally expired. Two months later, in August of 1993, Popolano decided to leave the ranks of FBI management. The FBI granted his request to do so on September 5, 1993. At that time Popolano's position was temporarily filled by Agent Hasychak, the agent who was to serve the next term as Relief Supervisor. Plaintiff contends the Government purposely timed Popolano's departure until after her term as Relief Supervisor had expired. In contrast the Government contends it rotated Hasychak into the position of Relief Supervisor and hence into the temporary position as Acting Supervisor in accordance with the routine rotation process which governed the Relief Supervisor position. Plaintiff appears to contend, however, that Girardi had discretion as to who to appoint as acting supervisor and discriminated against her when he appointed Hasychak, a male agent who was purportedly less qualified than Plaintiff for the position.

On January 20, 1994 the FBI's Honolulu career board reconvened to update its rankings for Relief Supervisors. The board did not rank Plaintiff within the top five candidates, allegedly in retaliation for her complaints about Popolano. Plaintiff's husband, also an agent with the FBI's Honolulu office, inquired about the career board's actions. Subsequently a new career board convened (or perhaps the same career board reconvened), although it is unclear whether it did so in response to the inquiry by Plaintiff's husband. The career board gave Hasychak the highest ranking out of 5 candidates and gave Plaintiff the lowest ranking. This ranking stands in contrast to the 1992 ranking in which Plaintiff received the second highest ranking and Hasychak received the lowest of 5 rankings.

In April of 1994 Plaintiff was relieved of her position as the bank robbery coordinator on the Violent Crimes Squad and was transferred to the Organized Crime/Drug Squad. Plaintiff apparently agreed to the transfer because she "had been led to believe that she would still be able to pursue career advancement as the principal relief supervisor on the [Organized Crime] Squad." See Plaintiff's Opposition at p. 7. Plaintiff contends she later learned that she had been transferred to the Organized Crime Squad in retaliation for her previous complaints to EEO Counselor Lowell about Popolano.

According to Plaintiff, in July of 1994 Supervisor Stern suggested she apply for the Relief Supervisor position on the Organized Crime Squad. Purportedly Stern stated Plaintiff was his first choice for the position and that she was more qualified than Agent Blake, whose judgement Stern supposedly questioned. Subsequently the Honolulu career board convened on September 20, 1994 to select the new Principal Relief Supervisor. The board chose Agent Blake over Plaintiff despite the fact Plaintiff was allegedly more qualified than he. Plaintiff contends that the day after the career board's decision Stern said her opportunity for selection had been stymied by Girardi and by Robert Chiardio. However, Plaintiff claims she later learned Stern himself had also thwarted her promotion by changing one of the selection criteria at the last minute to favor the board selecting Agent Blake.

In response to this action by the career board, Plaintiff consulted an EEO Counselor on November 3, 1994. The Counselor initiated the EEO process and apparently issued a notice of right-to-file. Subsequently Plaintiff filed a formal administrative complaint of discrimination with the Department of Justice on December 9, 1994.

Plaintiff contends the male FBI agents in the Honolulu office retaliated against her

because she filed this discrimination complaint. She claims they denigrated her performance and personal behavior, subjected her to sexual stereotypes, refused to cooperate with her in connection with her duties as media agent, diminished her responsibility and authority, and reduced her opportunities for career advancement. Plaintiff contends she felt compelled as a result of these actions to transfer to another office. On December 6, 1994 Plaintiff was selected for a supervisory position in Washington, D.C., for which she had applied with the Central/South American/Caribbean Drug Unit. She transferred to this position despite the alleged hardship of uprooting her children and husband from Hawaii.

## STANDARD OF REVIEW

### I. Judgement on the Pleadings

Judgement on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgement as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984).

In reviewing a defendant's motion under Rule 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations. *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir.1992); *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir.1990).

Where the district court goes beyond the pleadings to resolve an issue, the motion properly is treated as one for summary judgement. Fed.R.Civ.P. 12(c); *Hal Roach Studios*, 896 F.2d at 1550 (9th Cir.1990).

### II. Summary Judgement

Summary judgement shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgement procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgement must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "If the party moving for summary judgement meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgement. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgement reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc.*

*v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

In this motion the Government contends most of Plaintiff's claims of discrimination and/or retaliation are time-barred because Plaintiff did not comply with the requisite administrative grievance procedures. In particular the Government seeks judgement on the pleadings on those challenged employment actions which took place more than 45 days before Plaintiff brought these incidents to the attention of the second EEO Counselor on November 3, 1994.

Administrative regulations require FBI employees to bring their employment grievances to the attention of an EEO Counselor within 45 days of when the contested employment action occurs. 29 C.F.R. § 1614.105(a)(1). The employee need not take any particular steps to do so other than to "consult" or "initiate contact" with an EEO Counselor. 29 C.F.R. § 1614.105(a)(1). The EEO Counselor has the responsibility to investigate the matter and thereafter issue a notice of right-to-file within 30 days of learning of the grievance. 29 C.F.R.

§ 1614.105(d). After receiving this notice of right-to-file, the employee has 15 days within which to file an administrative complaint with the agency. 29 C.F.R. § 1614.106(b).

The Government first contends that Plaintiff's discrimination claim stemming from Popolano's abusive behavior towards her in June of 1993 is time-barred. Although Plaintiff brought this incident to the attention of EEO Counselor Lowell in June of 1993, she did not thereafter institute a formal administrative complaint as to this claim. Plaintiff contends she was not obligated to file a formal discrimination complaint in regards to the Popolano incident because the EEO Counselor never issued her a notice of right-to-file. Second, the Government argues Plaintiff's claims of alleged discrimination which took place more than 45 days prior to her November 1994 consultation with the second EEO Counselor are time-barred. The Government asserts these claims are barred because Plaintiff failed to institute the necessary EEO grievance process as to these claims. The Government contends the only employment actions which are properly before the Court are those which occurred on or after September 1994, within 45 days of meeting with the second EEO Counselor in November of 1994. Specifically, the Government does not seek judgement on Plaintiff's claims regarding the career board ranking Plaintiff poorly in September 1994 and all events thereafter.[1] In opposition Plaintiff argues the incidents of discrimination before that time are not time-barred because they fall within the continuing violation doctrine.

## I. *The Initial Consultation with the EEO Counselor*

■ The first issue raised in this motion is whether Plaintiff's discrimination claims relating to her first consultation with an EEO Counselor are time-barred. Plaintiff met with an EEO Counselor in June of 1993 to complain about Popolano's abusive treatment towards her when she arrested certain bank robbery suspects without first notifying him.

---

1. The Government does not contend that Plaintiff has failed to exhaust her administrative remedies for those acts of retaliation taken after she brought her claims to the attention of an EEO Counselor in November of 1994 and subsequently filed her discrimination complaint for administrative review in December of 1994.

The Government contends these claims are time-barred because Plaintiff did not bring timely a formal complaint against Popolano. In opposition Plaintiff argues she complied with the regulations to consult an EEO Counselor, which she did immediately after her altercation with Popolano. She contends that she could not have brought a formal charge of discrimination as to this incident, and therefore this claim is not time-barred, because the EEO Counselor did not issue her a notice of right-to-file.

The FBI's administrative regulations provide that in order for an employee to preserve her discrimination claims she must file an administrative complaint within 15 days of receiving the EEO Counselor's notice of right-to-file. 29 C.F.R. § 1614.106(b). In the case at bar the EEO Counselor who Plaintiff saw in June of 1993 never issued her such a notice. The regulations do not expressly bar employees from filing complaints without first receiving this notice, but nevertheless there are no provisions which allow employees to do so without receiving such notice. *See generally* 29 C.F.R. § 1614.106. Plaintiff contends the FBI engaged in misconduct by precluding her from filing a complaint when it failed to issue her this notice of right-to-file. In contrast the Government argues the EEO Counselor had no obligation to issue a notice of right-to-file because the matter was resolved in Plaintiff's favor. In support of this position the administrative provisions require the EEO Counselor to inform the employee in writing of his or her right to file a complaint "[i]f the matter has not been resolved...." 29 C.F.R. § 1614.105(d). The Government contends the matter was resolved because EEO Counselor Lowell and Special Agent In Charge Freeman agreed with Plaintiff that Popolano had acted inappropriately, Freeman "chewed out" Popolano for his behavior, and Popolano's written reprimand of Plaintiff never went into her personnel file.

The Court finds Plaintiff was not obligated to file a complaint of discrimination until the EEO Counselor issued her a notice of right-to-file. Although the Government contends that the matter was resolved, it appears that the EEO Counselor never conducted the requisite "final interview" within 30 days of learning of the grievance. 29 C.F.R. § 1614.105(d). Conducting a final interview would have formally determined whether the matter was in fact resolved to Plaintiff's satisfaction. Granted, there appears to be little need for such an interview when the matter seems to have been resolved in the employee's favor. Nevertheless, holding a final interview is a requirement that ought to be followed by the agency. If the matter was indeed resolved to the employee's satisfaction, that fact can be established on the record at the final interview. Without such an interview the record remains unclear whether the matter was truly resolved in the employee's favor. The agency should not place the burden on the employee to ask the EEO Counselor to conduct the final interview or to issue a notice of right-to-file.

The holding in *Weick v. O'Keefe*, 26 F.3d 467 (4th Cir.1994), supports this view. *Weick* held that a discrimination claim was not time-barred even though it was filed three years after the contested employment action occurred (denial of promotion). The claim was not untimely because the plaintiff had complied with the administrative grievance procedures by bringing the dispute to the attention of an EEO Counselor. In contrast the EEO Counselor had failed to comply with its obligations to issue a notice of right-to-file complaint, and *Weick* found the plaintiff had no obligation to file a complaint where the EEO Counselor had not issued this notice. *Id.* at 469. In particular *Weick* noted the regulations " 'establish no set limitations on the amount of time that may pass between a statutory violation and the filing of a formal complaint.' " [2] *Id.* (quoting *Brown v. Marsh*, 777 F.2d 8, 12 (D.C.Cir.1985) (interpreting former provision)).

For these reasons the Court finds Plaintiff's complaint as to Popolano's discrimina-

---

**2.** The Government seeks to distinguish *Weick* because in that case the EEO Counselor took deceptive actions to mislead the plaintiff to believe the dispute had been resolved in her favor. *Id.* at 468. However, that factored into the court's rationale only as to its *alternative* holding if the statute of limitations were held to apply, they would be equitably tolled. *Id.* at 470.

tion is not time-barred because she never received a notice of right-to-file.

## II. *Continuing Violation*

The Government contends all other incidents of alleged discrimination after June of 1993 when Plaintiff met with EEO Counselor Lowell are time-barred because they occurred more than 45 days before Plaintiff complained to the second EEO Counselor on November 3, 1994. As stated previously, the administrative regulations require FBI employees to bring disputes to the attention of an EEO Counselor within 45 days after the challenged employment action occurs. 29 C.F.R. § 1614.105(a)(1). The Government contends Plaintiff failed to comply with this provision and thus the following employment actions which Plaintiff challenges are time-barred: (1) appointing Relief Supervisor Agent Hasychak to fill Popolano's vacancy in September of 1993; (2) assigning Plaintiff a poor ranking on the Relief Supervisor list for the Violent Crimes Squad in January and March of 1994; (3) assigning Plaintiff a poor ranking on the Principal Relief Supervisor list in September 1994 after transferring Plaintiff to the Organized Crime Squad; and (4) harassing and discriminating against Plaintiff in retaliation after she complained to the first EEO Counselor in June of 1993. In opposition Plaintiff contends these actions are not time-barred because they form part of a single continuing violation to discriminate and/or retaliate against her by denying her opportunities for career advancement.

■ The continuing violations doctrine tolls the statute of limitations for alleged violations that form part of a pattern of ongoing unlawful conduct. A "systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982); *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238–39 (9th Cir.1991). A continuing violation may be established by demonstrating a discriminatory policy which applies to a group of employees or by showing a series of related acts against a single individual, one or more of which falls within the limitations period. *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480–81 (9th Cir.1989). The key inquiry to determine if the doctrine applies is whether the alleged improper acts are sufficiently related to constitute a continuing violation. *Anthony v. County of Sacramento, Sheriff's Department*, 845 F.Supp. 1396, 1402 (E.D.Cal.1994) (citing *Green*, 883 F.2d at 1480–81).

■ The Government first contends Plaintiff cannot assert a continuing violation because the Complaint states the actions were 'separate and distinct' violations. At the hearing Plaintiff clarified that the reference in the Complaint to "separate" violations meant only she is asserting two separate types of violations—sex discrimination and retaliation. The Court grants Plaintiff leave to amend the Complaint to clarify it in this manner. Even so, however, the Government cites no authority for the proposition that particular violations may not simultaneously form part of an ongoing continuing violation. The two concepts are not mutually exclusive. For example, the continuing violation inquiry does not define whether a violation has occurred. Rather, it simply determines whether violations which occurred outside the statute of limitations period are sufficiently related to the violations within the limitations period, to find the former violations are not time-barred. This is not to say the violations before and during the limitations period are not separate violations that could be actionable independent of one another if they all fall within the statute of limitations period. The claims are only regarded as a "single" violation for purposes of the statute of limitations inquiry.

The Government also contends the Court should apply the three factors employed by the Seventh Circuit to determine whether a continuing violation exists: (1) the subject matter of the discrimination, (2) the frequency of the discrimination, and (3) the degree of permanence of the challenged employment action. *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir.1992). The Court does not find these factors controlling, however, because the Ninth Circuit has never expressly articulated nor relied on these factors, notwithstanding that other courts have utilized these

factors dating back to 1983. *See Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983). Though the Ninth Circuit in *Green v. Los Angeles* cited a case which quoted a Fifth Circuit case which applied the *Selan* factors, it cited that case only for the general proposition that incidents of discrimination must be "closely enough related" to form a continuing violation. *See Green v. Los Angeles*, 883 F.2d at 1480–81 (quoting *Bruno v. Western Elec. Co.*, 829 F.2d 957, 961 (10th Cir.1987) (quoting *Berry*, 715 F.2d at 981)).

The Ninth Circuit made no reference to these three factors in finding a continuing violation in *Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir.1990). In *Sosa* the Ninth Circuit found that two incidents of discrimination which occurred outside the statutory period were not time-barred: (1) the defendant university's unprecedented denial of the plaintiff professor's request for leave and travel expenses to attend an academic conference and (2) the university's act of imposing a restrictive evaluation process on the professor. *Id.* at 1455. The court found these acts were not barred by the statute of limitations because they were sufficiently linked to the timely claim that the university had failed to promote the plaintiff. As such the plaintiff in *Sosa* "satisfied the requirement that he timely file with the EEOC on some discriminatory act evidencing the continuing violation or policy of discrimination against him." *Id.* at 1456.

In *EEOC v. Local 350*, 982 F.2d 1305 (9th Cir.1992), the Ninth Circuit similarly found a continuing violation without discussion of any particular factors. In that case the court found that a plaintiff's claims of discrimination were not time-barred, even though he had been denied access to the union's work list *three years* before filing suit. The plaintiff claimed the union had a discriminatory policy of not allowing ex-retirees to be named on the work list. The plaintiff sought monetary relief in the form of back pay from the date he was first denied access to the list. The Ninth Circuit agreed, despite the fact

the plaintiff initially had been denied access to the list in 1984 and he did not file suit until 1987. The fact that the plaintiff had continued to seek access to the list into 1987, within the statute of limitations period, established that the prior denials which occurred before the statutory period constituted a continuing violation. The court reasoned the continuing violation doctrine applied because the "allegedly discriminatory policy was in effect when [the plaintiff] first encountered it in 1984, and remains in force today."[3] *Id.* at 1308. Under the *Selan* factors applied by the Seventh Circuit, the union's actions in 1984 of barring plaintiff from the work list could have been sufficiently permanent in nature to put the plaintiff on notice that he could have filed suit at that time. The Ninth Circuit nevertheless found a continuing violation existed. In this way the Ninth Circuit did not penalize the plaintiff for not filing suit earlier.

■ The holdings in these cases suggest the Ninth Circuit does not apply the *Selan* factors used by the Seventh Circuit. Instead the key requirement imposed by the Ninth Circuit to find a continuing violation is that the incidents must be "closely enough related," such as within the same category or type of violation. *Green v. Los Angeles County*, 883 F.2d at 1480–81; *Anthony v. County of Sacramento, Sheriff's Department*, 845 F.Supp. at 1402. For example in *Green* the Ninth Circuit found no continuing violation because the incidents which fell outside the statute of limitations period were not in the same category as those within the statute of limitations: discrimination against the plaintiff after she left the job were distinct from the category of harassment by employees which took place while she was employed. *Green*, 883 F.2d at 1481.

■ Applied in the case at bar, the Court finds Plaintiff has shown sufficient facts to suggest a continuing violation. At issue are the allegedly discriminatory actions which took place 45 days prior to Plaintiff's consultation with the second EEO Counselor in November of 1994: Supervisor Popolano's

---

**3.** Although the plaintiff in *Local 350* attacked a discriminatory *company-wide* policy rather than a practice which applied only to him individual- ly, this does not appear to impact the instant analysis of whether a continuing violation exists.

actions against Plaintiff in June of 1993,[4] selecting Agent Hasychak over Plaintiff as the Acting Supervisor to temporarily fill Popolano's vacancy in September of 1993, assigning Plaintiff low rankings on the Relief Supervisor list in 1994 under less qualified males, transferring Plaintiff to the Organized Crime Squad (to the extent Plaintiff claims this action was discriminatory), and various other harassment which took place after Plaintiff reported Popolano to the first EEO Counselor in June of 1993. Each of these actions allegedly formed part of a continuing practice of discrimination and/or retaliation [5] designed to frustrate Plaintiff's ability to perform her job duties and pursue opportunities for career advancement.

For example, when Popolano allegedly required Plaintiff to use the SWAT team on all arrests, this undermined Plaintiff's job responsibilities and autonomy because male agents were not similarly required to do so. Second, Plaintiff was denied opportunity for added job responsibility and career advancement when her supervisors allegedly timed Popolano's departure so that she would not become the temporary Acting Supervisor. Third, the career board fatally undermined Plaintiff's opportunities for becoming a Relief Supervisor or temporary Acting Supervisor when in 1994 it repeatedly allegedly ranked Plaintiff lower on the Relief Supervisor list than less qualified male agents. Relatedly, Plaintiff's transfer to the Organized Crime Squad undermined her career advancement because, unbeknownst to her, she allegedly had been transferred with no opportunity to become a Relief Supervisor on that squad. Last, the various harassment and derogatory remarks by male agents and supervisors in the office were allegedly designed to undercut Plaintiff's effectiveness in performing her job duties (for example such as media coordinator) and to tarnish her reputation in the office and the police community. These actions are sufficiently linked to the discrimination and/or retaliation claimed by Plaintiff

which took place within the statute of limitations period—Plaintiff's poor ranking on the September 1994 list of Principal Relief Supervisors for the Organized Crime Squad and the derogatory comments and actions taken by male members in the office on or after September of 1994.

For these reasons the Court concludes Plaintiff's claims of discrimination and/or retaliation which took place prior to September 19, 1994 (i.e., 45 days preceding Plaintiff's consultation with EEO Counselor Pape on November 3, 1994) constitute part of a continuing violation with the acts which fall within the limitations period. Therefore these claims are not time-barred.

Moreover the Court reaches this same conclusion even applying the *Selan* factors. First, the subject matter of the alleged discriminatory and/or retaliatory actions is sufficiently related. As the Court found *supra*, the actions all relate to undermining or frustrating Plaintiff's opportunities for career advancement. Second, the actions were sufficiently frequent—Plaintiff cites to six or more employment actions which the Honolulu office allegedly took against her between June of 1993 and September of 1994, as well as ongoing derogatory comments made by members of the office during that period and thereafter. The Court rejects the Government's contention that the actions were not frequent enough to establish a continuing violation. The actions which Plaintiff alleges occurred before the statute of limitations period were not isolated occurrences. To the contrary, Plaintiff appears to allege that every employment action which related to her career advancement during that time frame was discriminatory and/or was taken in retaliation against her. Third, the Court finds the employment actions were not sufficiently permanent in nature to expect Plaintiff to have complained to an EEO counselor after each incident. For example, although Plain-

---

4. Though the Court finds above that this action is not barred by the statute of limitations, as Plaintiff timely brought this dispute to the attention of an EEO Counselor, this action also falls within the continuing violation doctrine.

5. The conduct alleged by Plaintiff could have been due to retaliation, with one exception. The actions taken by the agency before Plaintiff reported Popolano to EEO Counselor Lowell in June of 1993 could not constitute retaliation because at that point the agency had nothing for which to retaliate against her.

tiff was not selected as Acting Supervisor to replace Popolano in September of 1993 and she thereafter received poor rankings by the career board in January and March of 1994, Plaintiff would not have been on notice that these actions were discriminatory or retaliatory until she could view them in context with the subsequent employment actions taken against her. In this way Plaintiff has met the three factors articulated in *Selan* and thus she has shown a continuing violation.

For these reasons, under either analysis Plaintiff's claims are not time-barred. The Court thus denies Defendant's motion for judgement on the pleadings or in the alternative for summary judgement.

### CONCLUSION

The Court DENIES the Government's motion for judgement on the pleadings or in the alternative for summary judgement. First, as to the allegations of discrimination by Popolano, this claim is not time-barred because Plaintiff brought the dispute to the attention of an EEO Counselor in June of 1993 and her ability to sue is not compromised by the agency's failure to issue a notice of right-to-file. Second, this and the other allegations of discrimination and/or retaliation which arguably fall outside the limitations period form part of a continuing violation and hence are not time-barred.

IT IS SO ORDERED.