Wellborn FREEMAN, Plaintiff–
Appellant,

v.

OAKLAND UNIFIED SCHOOL
DISTRICT; Carole Quan,
Defendants–Appellees.

No. 01–15327.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 2002.

Filed May 23, 2002.

Deborah A. Duggan, Oakland, CA, for the plaintiff-appellant.

Daniel B. Hoye, Lafayette & Kumagai LLP, San Francisco, CA, for the defendants-appellees.

Before: O'SCANNLAIN and TALLMAN, Circuit Judges, and KING,* District Judge.

TALLMAN, Circuit Judge.

## I

Appellant Wellborn Freeman ("Freeman") appeals the district court's summary judgment of his race-based employment discrimination and retaliation claims. Freeman contends that the district court erred in finding that he had not exhausted his administrative remedies as to the claims raised in his First Amended Complaint and in finding, alternatively, that Freeman failed to raise a genuine issue of material fact in establishing a prima facie case of discrimination. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Because we hold that Freeman failed to exhaust his administrative remedies as required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, we do not reach the question of whether he estab-

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Ha- waii, sitting by designation.

lished a prima facie case of discrimination sufficient to avoid summary judgment.

## II

Freeman, an African–American male, has taught at the Calvin Simmons Middle School in the Oakland Unified School District ("OUSD") since 1993. At the beginning of the 1997–1998 school year, OUSD increased the number of periods in a school day at its middle schools from six to eight. The Oakland Education Association ("OEA"), the bargaining representative for "certificated" OUSD employees, objected to the eight-period school day. OEA filed a grievance with the California Public Employment Relations Board alleging that the new eight-period day violated a provision of the collective bargaining agreement between OUSD and OEA, which restricted the number of daily student contacts required of teachers within the district. In March 1998, OUSD and OEA reached a settlement which provided that the six-period school day would be reinstated at all schools within the district, but that individual schools could elect to have an eight-period day.

Thereafter, in the Spring of 1998, Calvin Simmons Middle School elected to have an eight-period school day. Unaware of the previous settlement agreement, Freeman and several other teachers at Calvin Simmons filed grievances with OEA in October 1998. OEA refused to process the grievances based on the terms of its March 1998 settlement agreement.

Freeman then filed an Equal Employment Opportunity Commission ("EEOC") charge on March 4, 1999, in which he alleged that "[r]acial and sexual discriminatory practices among the teaching staff, continue to persist," and requested that "suit for racial and sexual discrimination" be filed on his behalf.[1] However, Freeman's EEOC charge addressed only discrimination in the context of an election for the Faculty Advisory Council ("FAC"), an annual election among school faculty to select representatives on matters relating to the operation of the school.[2]

1. Freeman's EEOC charge alleged:

Racial and sexual discriminatory practices among the teaching staff, continue to persist.

Faculty Advisory Council (FAC) elections discriminate within Calvin Simmons Jr. High School under the principal, Mr. Caravel's administration.

There is no other "special combining" arrangement made, like the Special Education department's. Both candidates are, automatically, selected. As the only Black Social Science teacher candidate, ONLY the Social Science Dept. was "combined" with another department—Language Arts. This arrangement ensures that I am unable to run unopposed. (See attached ballots).

According to Oakland Education Association (OEA)'s contract, teachers must vote, according to a department. Additional Literacy Depts. were "created to ensure" that candidates, voting by departments, would provide votes. Votes that were needed, inorder [sic] to be undisputably, placed on the FAC. No Literacy Department, exists, in Oakland public schools.

My name was craftily combined, by the Caucasian FAC Chairman, with a Caucasian teacher. This "combining" allowed him, a favorable vote. Caucasian teachers continue to out-number and thus, out-vote Black teachers. Simply stated, the need to exclude a Black male teacher from the FAC is extremely rash. Black male educators are completely excluded from adopting policies, that affect the educational needs of young Black males, that lack rare, positive, Black male role models.

Please file suit for racial and sexual discrimination on my behalf. I also request a Notice of Right to Sue, because I intend to pursue this matter through private litigation.

2. Specifically, the purpose of the FAC is to "provide a means of communication between the faculty and principal of the school on matters relating to improvements related to the operation of the school and settling differences on items of common concern." The FAC's duties do not involve class scheduling or assignments.

Freeman was subsequently issued a right to sue letter by the EEOC on March 24, 1999. Freeman filed the present action against OUSD, OEA, and former OUSD Superintendent Carol Quan on June 21, 1999.[3] Freeman filed his First Amended Complaint on November 19, 1999, alleging race-based employment discrimination in violation of Title VII.[4]

OUSD moved for summary judgment. The district court granted OUSD's motion, finding that Freeman's failure to exhaust his administrative remedies deprived it of subject matter jurisdiction over his suit. In concluding that none of the allegations in Freeman's First Amended Complaint were "like or reasonably related to the allegations in the EEOC charge," the district court stated:

> None of the allegations in the First Amended Complaint involve the Faculty Council election, which was the sole subject of the EEOC charge. Instead, the allegations in the complaint related exclusively to class size and student contacts at Calvin Simmons and the manner in which OUSD and OEA handled the dispute over the switch to an eight period school day. Furthermore, the EEOC charge focuses on a particular Faculty Council election in Fall 1998 that alleg-

edly was fixed by three faculty members at Calvin Simmons. In contrast, the allegations in the complaint do not involve action by these faculty members, but actions by OUSD and OEA affecting class size at middle schools throughout the district.

\* \* \* \* \* \*

Freeman's alleged exclusion from the Faculty Council is not related to the allegations that he was subjected to discriminatory decisions in assigning classes. In addition, Freeman's exclusion from the Faculty Council is unrelated to his ability to participate in decisions made by OUSD and OEA concerning the eight period school day. A reasonable EEOC investigation of Freeman's March 1999 charge would not focus beyond Freeman's ability to participate in administrative decision-making at Calvin Simmons.

The district court also rejected Freeman's argument that the continuing violation doctrine connected the allegations in the First Amended Complaint to those in the EEOC charge. The district court concluded that "[n]othing in Freeman's EEOC charge explicitly or implicitly suggests retaliation, a pattern or practice of discrimi-

---

**3.** By stipulation of the parties, OEA was dismissed with prejudice from the lawsuit on December 5, 2000.

**4.** In contrast to his EEOC Charge, in his First Amended Complaint, Freeman alleged that OUSD and Quan (collectively "OUSD") discriminated against him (1) "by requiring him to teach approximately 30 students during the 1997–1998 school year, which was in excess of the contract agreement between OUSD and OEA;" (2) "through the execution of a separate agreement between OUSD and OEA in violation of the collective bargaining agreement;" (3) "by allowing other teachers to teach either the prescribed number of students pursuant to the collective bargaining agreement or fewer than the number pre-

scribed under the Collective Bargaining Agreement during the 1997–1998 school year;" (4) "by retaliating against Freeman for objecting to the assignment of approximately 30 students to him during the 1997–1998 school year, by subsequently assigning 42 students to him during the 1998–1999 school year as a form of harassment;" (5) "by allowing other, non-African-American teachers to teach either the prescribed number of students pursuant to the collective bargaining agreement or fewer than the number prescribed under the Collective Bargaining Agreement during the 1998–1999 school year"; and (6) by "failing to remediate after Freeman filed grievances and charges/claims of discrimination."

nation, or anything else that could support a continuing violation theory." Finally, the district court found, in the alternative, that "the record is devoid of evidence to establish a prima facie case of discrimination, or to raise a genuine dispute of fact about it." Freeman timely appealed.

## III

We review the district court's order granting summary judgment de novo. *See B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir.2002). Summary judgment is appropriate if " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)). We also review the district court's determination that it lacked jurisdiction to hear Freeman's discrimination claims de novo. *See id.*

In order to establish subject matter jurisdiction over his Title VII claim, Freeman was required to exhaust his administrative remedies by either "filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *Id.; EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (1994). As we recently explained, "[t]he administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B.,* 276 F.3d at 1099.

█ Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint "nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Oubichon v. North Am. Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973). Although allegations of discrimination not included in a plaintiff's EEOC charge generally may not be considered by a federal court, subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *B.K.B.,* 276 F.3d at 1100 (quoting *Farmer Bros.,* 31 F.3d at 899 (emphasis in original)); *see also Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.1990) (noting that the court "must inquire whether the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself") (internal quotations omitted).

We "consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.,* 276 F.3d at 1100. And while it is true that "[w]e construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading," *id.* (internal quotations omitted), there is a limit to such judicial tolerance when principles of notice and fair play are involved.

█ In determining whether the exhaustion requirement has been satisfied, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.* "The crucial element of a charge of discrimination is the factual statement contained therein." *Id.*

In this appeal, we consider two arguments in support of Freeman's contention

that he adequately exhausted his administrative remedies. The first, which has not been raised by Freeman, is that the language of the EEOC charge itself was sufficient to satisfy the exhaustion requirement. The second is that the allegations in the EEOC charge and the Complaint were related since they were all part of a continuing violation. As explained below, neither of these theories favors Freeman.

### A

The rule of liberal construction does not suggest that a plaintiff sufficiently exhausts his administrative remedies under Title VII by merely mentioning the word "discrimination" in his or her EEOC administrative charge. As we recently noted in *B.K.B.*, the inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving. *See id.* Only by engaging in such an inquiry will the actual focus of the administrative charge, and the scope of the claims exhausted, be revealed.

■ The point is well-illustrated in this case. Freeman's charge began by stating that "[r]acial and sexual discriminatory practices among the teaching staff, continue to persist." Further, at the conclusion of his charge, Freeman requested that the EEOC "file suit for racial and sexual discrimination on [his] behalf." However, by comparing the remaining language in Freeman's charge with the allegations in his First Amended Complaint, it becomes clear that the allegations in Freeman's EEOC charge were not like or reasonably related to those in the First Amended Complaint so as to sufficiently exhaust Freeman's administrative remedies. *Compare, supra,* notes 1 & 4. A reasonable EEOC investigation of that charge would not have focused on anything beyond Freeman's participation in the FAC and the FAC election process at Calvin Simmons.

The factual allegations in Freeman's EEOC charge refer only to discriminatory conduct in relation to a specific election for the FAC. Nothing in the language of the charge itself would have resulted in an EEOC investigation encompassing alleged discrimination in the context of teaching assignments, class size, and the handling of the dispute over the eight-period work day. These allegations, which surfaced for the first time in Freeman's First Amended Complaint, clearly would not have been necessary to, or addressed in, the scope of an investigation into the conduct of the FAC elections. *Compare Farmer Brothers*, 31 F.3d at 899 (finding that district court properly exercised jurisdiction over claims not specifically alleged in complaint and stating that "[n]ot only did the EEOC charge provide adequate notice to Farmer Bros. of [the plaintiff's] discriminatory layoff claims, but also in order to evaluate (or even to understand) [the plaintiff's] theory of the case, it was *necessary* for the EEOC to investigate the circumstances of [his] layoff") (emphasis in original), *and B.K.B.*, 276 F.3d at 1101 (noting that "[t]he allegations made by Plaintiff in her pre-complaint questionnaire certainly provide additional detail to the allegations of harassment of which the [state agency] was on notice.").

Further, nothing in Freeman's charge would have indicated that an investigation should focus on anything more than the allegations of discrimination by those particular individuals involved in the conduct of the FAC election. Finally, the First Amended Complaint itself neither refers to the FAC election, nor attempts to demonstrate how its allegations regarding class assignments and the collective bargaining agreement between OUSD and OEA rea-

**638**

sonably relate to the FAC election. The allegations in the Complaint were not even consistent with Freeman's original theory of the case, which focused on racial discrimination in the context of the FAC election.

Despite Freeman's cursory reference to "racial and sexual discrimination" in his EEOC charge, an analysis of the actual charge demonstrates that the allegations contained therein were in no way "like or reasonably related" to the claims in his First Amended Complaint. Since Freeman failed to exhaust his administrative remedies as required under Title VII, the district court properly dismissed the case for lack of subject matter jurisdiction.

**B**

■ Freeman argues that because the EEOC charge alleged one act in a series of acts constituting a continuing violation, all the other acts comprising the continuing violation, i.e., those alleged in the First Amended Complaint, are "like or reasonably related" to the EEOC charge and thus were properly exhausted. The district court properly rejected Freeman's argument on this basis as well.

■ The continuing violation theory provides that "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Sosa*, 920 F.2d at 1455. A continuing violation may be established by either demonstrating a "policy or practice" of discrimination or by " 'demonstrating a series of related acts against a single individual.' " *Id.* (quoting *Green v. Los Angeles County*, 883 F.2d 1472, 1480 (9th Cir.1989)). While we have "permitt[ed] suit on a continuing violation theory evidenced but not specifically alleged in an EEOC charge," *id.* at 1458, the EEOC charge must at least sufficiently apprise the EEOC, " 'in general

terms, of the alleged discriminatory parties and the alleged discriminatory acts.' " *Id.* (quoting *Chung v. Pomona Valley Comm. Hosp.*, 667 F.2d 788, 790 (9th Cir. 1982)).

In *Sosa*, we found that "Sosa's allegations in his EEOC charge—of a course of intimidation, harassment, and disparate treatment; of a pattern of retaliation discrimination; of the refusal to promote him and that he had lodged other 'discrimination charges/complaints'—are together sufficient to have apprised the EEOC of all the discriminatory acts Sosa subsequently alleged as part of a continuing violation in his First Amended Complaint." 920 F.2d at 1458. Similarly, in *Chung*, we found that Chung's "failure to spell out a continuing-violation theory did not prevent the EEOC from conducting an effective investigation of his claims" since "Chung's EEOC charge alleged a number of discriminatory acts that suggest a pattern." 667 F.2d at 790. In each of these cases, the allegations in the plaintiff's EEOC charge were sufficient to suggest that the allegations in the charge were reasonably related and to suggest a continuing violation.

Freeman's charge, on the other hand, in no way suggests that Freeman was asserting a continuing violation against OUSD. Although Freeman's charge did mention racial discrimination, the sole focus of his charge was the alleged discriminatory conduct that occurred in the context of one FAC election. Unlike *Chung* and *Sosa*, Freeman's charge did not "allege[ ] a number of discriminatory acts that suggest a pattern," *Chung*, 667 F.2d at 790, or that would have been "sufficient to have apprised the EEOC of all the discriminatory acts [he] subsequently alleged as part of a continuing violation in his First Amended Complaint," *Sosa*, 920 F.2d at 1458. Freeman's failure to support an inference of

either a series of related acts or a pattern or practice of discriminatory conduct precludes him from successfully asserting that his EEOC charge is related to his First Amended Complaint under the continuing violation theory.

While it is true that the continuing violation theory "draws within the ambit of a Title VII claim all conduct occurring before and after the filing of an EEO charge," that conduct must still be like or reasonably related to the events charged. *See Greenlaw v. Garrett,* 59 F.3d 994, 1000 (9th Cir.1994). Freeman's failure to link his EEOC charge as like or reasonably related to the allegations in his First Amended Complaint regarding teaching assignments and class size also precludes him from surviving a motion for summary judgment under this theory.

**AFFIRMED.**