**Abdul Karim WALI, Plaintiff,**

v.

**ONE SOURCE COMPANY, Ms. Gi Corderzo and Mr. Terry Vidal, Defendants.**

**No. 07 Civ. 7550(DF).**

United States District Court, S.D. New York.

Dec. 30, 2009.

Abdul Karim Wali, Bronx, NY, pro se.

Harry Mark Weinberg, Law Offices of Harry Weinberg, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

DEBRA FREEMAN, United States Magistrate Judge:

In this case, which is before me on consent pursuant to 28 U.S.C. § 636(c), plaintiff Abdul Karim Wali ("Wali") claims that his former employer, defendant One-Source, Inc. ("OneSource"), and two of OneSource's human resources employees, Ms. Gi Corderzo ("Cordero") and Ms. Terry Vidal ("Vidal") (all, collectively, "Defendants")[1] violated his rights under Title VII of the Civil Rights Act of 1964 (the "Title VII" or the "Act"), 42 U.S.C. § 2000e *et seq.*, by terminating his employment on the basis of his race, color and/or religion. (*See generally* Amended Complaint, dated Sept. 20, 2007 ("Am. Compl.") (Dkt. 4).)

Defendants have moved for summary judgment (Dkt. 37), seeking dismissal of all of Wali's claims. For the reasons discussed below, Defendants' summary judgment motion is granted.

## BACKGROUND

### A. *Factual Background* [2]

During the relevant time period, One-Source was "a building maintenance and janitorial contractor, performing work in, among other places, commercial office buildings in the New York metropolitan area." (*See* Def. Rule 56.1 Stmt., at ¶ 2

---

1. Defendants state they have been named incorrectly in the caption of the Amended Complaint. (*See* Statement of Undisputed Material Facts Submitted by Defendants Pursuant to Local Civil Rule 56.1, dated Mar. 31, 2009 ("Def. Rule 56.1 Stmt.") (Dkt. 38), at 1.)

2. The facts summarized herein are taken primarily from Defendants' Local Rule 56.1 Statement and evidence submitted by the parties. As discussed below (*see infra* at 178), Wali has failed to submit a responsive Rule 56.1 Statement, appearing mainly to object to the accuracy of Defendants' submission and exhibits. (*See, e.g.,* Wali's Opposition to Defendants' Motion, dated Apr. 28, 2009 ("Pl. Opp. Mem.") (attached to Affirmation of Abdul Karim Wali in Opposition to the Motion for Summary Judgment, dated Apr. 28, 2009 ("Pl. Affirm.") (Dkt. 40)), at 2–3 (stating that certain of Defendants' exhibits "are not accurate and truth [*sic* ]"), 9 (stating that "the 18 statements of certification of [Defendants' counsel] Harry Weinberg [are] inaccurate including the conclusion").) As Wali's opposition memorandum is not consecutively paginated, the Court has assigned it page numbers.

(citing Certification of Harry Weinberg, Esq. in Support of Defendants' Motion for Summary Judgment, dated Mar. 31, 2009 ("Weinberg Cert."), at ¶ 3).)

On or about June 16, 2004, Wali, an African–American, Muslim male, was hired by OneSource as a porter. (*Id.*, at ¶ 3; *see also* Weinberg Cert., Ex. G (Deposition of Abdul Karim Wali Dep., conducted Nov. 14, 2008, and Mar. 4, 2009 ("Wali Dep.")), at p. 27, ll. 21–25; p. 28, l. 2; p. 38, l. 16–p. 39 l. 8.) According to Defendants, Wali was hired as a temporary vacation replacement for OneSource's regular employees during the vacation season in 2004. (Def. Rule 56.1 Stmt., at ¶ 3 (citing Weinberg Cert., Ex. B (Wali's Application for Employment, dated June 16, 2004); Ex. E (Wali's Acknowledgment of the Temporary Nature of Employment, dated June 16, 2004 ("Wali's Acknowledgment Form")); and Ex. G (Wali Dep.), at pp. 36–38).)

Defendants maintain that the terms and conditions of Wali's employment were governed by a collective bargaining agreement between the Realty Advisory Board on Labor Relations, Inc. ("RAB") and Local 32–32J, Service Employees International Union ("the Union"). (*Id.*, at ¶ 4 (citing Weinberg Cert., at ¶ 5 and Ex. C (2002 Contractors Agreement between the Union and the RAB, effective Jan. 1 through Dec. 31, 2004) (the "CBA")).) Defendants assert that each year, in accordance with the CBA, OneSource hires temporary employees to fill in for permanent employees taking vacation during the period of April 1 and September 15. (*Id.*, at ¶ 5 (citing Weinberg Cert., Ex. C (the CBA), at 79).) According to Defendants, when OneSource hires a temporary employee, the employee becomes a member of the Union and also signs an acknowledgment form confirming that he or she understands that the work he or she accepts from OneSource "is of a temporary nature and upon completion [he or she] will be terminated." (*Id.* (citing Weinberg Cert., Ex. D (Wali's Application for Union Membership and Payroll Deduction, dated June 16, 2004); Ex. E (Wali's Acknowledgment Form)).)

Defendants contend that Wali was aware that he was hired on a temporary basis and that he signed an acknowledgment form confirming his understanding of that fact. (*Id.*, at ¶ 7 (citing Weinberg Cert., at ¶ 8 and Ex. G (Wali Dep.), at pp. 36–38)); *see also* Weinberg Cert., Ex. E (Wali's Acknowledgment Form).) OneSource terminated Wali's employment on or about November 5, 2004, and Wali received his last paycheck for the pay period ending November 9, 2004. (*See id.*, at ¶¶ 3, 6 (citing Weinberg Cert., at ¶ 7 and Ex. F (Wali's Payroll History)).

While Wali does not dispute the dates of his employment (*see* Pl. Opp. Mem., at 4 ("my employment period ending November 5, 2004 .. could be accurate"), he does dispute his status as a temporary employee (*id.*, at 7 ("[no one] wrote or said … how long I was going to work" for OneSource)). At his deposition, Wali testified that he thought he was being hired permanently and not temporarily. (*See* Weinberg Cert., Ex. G (Wali Dep.), at p. 26, ll. 2–4.) Although he conceded that he signed a form acknowledging that he understood his job to be temporary (*see id.*, at p. 36, l. 2–p. 38, l. 15), Wali testified that he only signed the form because Cordero (who worked in OneSource's Human Resources Department) told him that, unless he did, he would not be able to work (*see* Pl. Opp. Mem., at 4; Weinberg Cert., Ex. G (Wali Dep.), at p. 28, ll. 10–19). Wali also disputes his membership in the Union, as he claims that he never paid Union dues (Pl. Opp. Mem., at 4, 7), although the documentary record shows otherwise (Weinberg Cert., Ex. D (Wali's Application

for Union Membership and Payroll Deduction)).

Wali also maintains that he was terminated not because of his supposed temporary status, but rather as a result of unlawful discrimination. In support of this claim, Wali argues that Defendants' discriminatory conduct is evidenced by the fact that others who were similarly situated to him, but of a different race, color and/or religion, were not similarly terminated. Specifically, Wali contends that he attended the same maintenance school as two men of purported Hispanic descent, Domingo Camacho ("Camacho") and DeJesus Carebello ("Carebello") (*see* Weinberg Cert., Ex. G (Wali Dep.), at p. 26, l. 12–p. 27, l. 7), that all three of them applied for employment with, and were hired by, OneSource, on or about June 16, 2004 (*see id.*, at p. 25, ll. 15–20), but that Camacho and Carebello continued their employment for longer periods than Wali (*see id.*, at p. 26, ll. 19–20 ("they [OneSource] kept the Hispanic workers and let me go"). Even though Wali admitted at his deposition that he had no documents or records to support his contention that either Camacho or Carebello continued to work for OneSource after the date of Wali's own termination (*see* Weinberg Cert., Ex. G (Wali Dep.), p. 56, ll. 14–15 ("The only thing I have is my visual."); *see also id.*, at pp. 60–61), he contends that, on separate occasions, he met each of these men and that each told him that he had worked for OneSource beyond November 2004 (*see id.*, at p. 54, l. 10–p.57, l. 7; pp. 58–60). In particular, Wali asserts that Carebello told him that he had worked for OneSource for a total of 14 months. (*Id.*, at p. 60, ll. 21–25.)

On this question, OneSource points to the fact that its employment records show that Camacho was hired on or about June 24, 2004 (approximately a week after Wali was hired) and was terminated on or about November 9, 2004 (only four days after Wali was similarly terminated).[3] (Def. Rule 56.1 Stmt., at ¶ 16 (citing Weinberg Cert., at ¶ 17, Ex. M (Camacho Employment Record)).)[4] As to Carebello, Defendants state that, based on OneSource's records, no individual by that name was employed by OneSource during the period in question. (Def. 56.1 Stmt., at ¶ 15; (citing Weinberg Cert., at ¶ 16); *see also* Weinberg Cert., Ex. G (Wali Dep.), at p. 62, ll. 14–22; p. 77, l. 22–p. 79, l. 14.) In his opposition papers, Wali merely asserts that he "ha[s] two witnesses" who can testify to the fact that Carebello existed and was, in fact, employed by OneSource around the same time as he was. (*See* Pl. Affirm., at 1; Pl. Opp. Mem., at 5–6.)

## B. *Procedural History*

### 1. *Administrative Proceedings*

Shortly after his termination, on January 19, 2005, Wali filed a complaint with

---

**3.** Defendant's Rule 56.1 Statement indicates that Camacho's termination date was November 10, 2004, but this is an apparent error, as the employment record shows a termination date of November 9, 2004. (*See* Weinberg Cert., Ex. M (Camacho Employment Record).)

**4.** At his deposition, Wali disputed the accuracy of this record (*see* Weinberg Cert., Ex. G (Wali Dep.), at p. 63, ll. 7–19), although, in opposition to Defendants' motion, Wali now relies on this record and additional records relating to Mr. Camacho to complain that, at least on certain occasions, Camacho supposedly received a higher hourly wage than he did (*see* Pl. Opp. Mem. (attaching a copy of Wali's and Camacho's employment record and payroll records)). On this point, Defendants respond that Camacho only received additional pay when he worked overtime (*see* Defendants' Reply Memorandum of Law, dated May 14, 2009 ("Def. Reply Mem.") (Dkt. 41), at 2), which is what the payroll records actually reflect (*see* payroll records attached to Pl. Opp. Mem.).

the New York State Division of Human Rights ("NYSDHR"), alleging he had been terminated from his employment with OneSource because of his race and color, in violation of Article 15 of the New York State Human Rights Law and Title VII. (*See* Weinberg Cert., Ex. H (Verified Complaint, in *Wali v. One Source Co.*, Case No. 10103636, Federal Charge No. 16GA501574, dated Jan. 19, 2005 ("NYSDHR Complaint")), at 1.) Wali's administrative complaint also authorized the NYSDHR to accept his complaint on behalf of the federal Equal Employment Opportunity Commission ("EEOC"). (*Id.*, at 2.)

Upon completion of its investigation, the NYSDHR found: "[T]here is no probable cause to believe the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (*See* Weinberg Cert., Ex. I (NYSDHR Determination and Order After Investigation, Case No. 10103636, dated July 13, 2006), at 1.) The EEOC adopted the NYSDHR's findings, dismissed Wali's complaint, and issued a "right to sue" letter. (*See* Weinberg Cert., Ex. J (EEOC Dismissal and Notice of Rights, dated Sept. 22, 2006).)

### 2. The Instant Action

Wali commenced this action on December 18, 2006. (Dkt. 2.) After the Court dismissed his initial Complaint (Dkt. 3), Wali filed an Amended Complaint on September 20, 2007 (Dkt. 4), alleging that he was wrongfully terminated from his position because of his race and color in violation of Title VII (*see* Am. Compl., at ¶¶ 4, 7).[5] In addition, Wali included a claim of religious discrimination (*id.*, at ¶ 7), which

was not raised in his prior administrative complaint (*see* NYSDHR Complaint).

Defendants filed an Answer (Dkt. 11), and, on March 31, 2009, a motion for summary judgment dismissing all of Wali's claims (*see* Notice of Motion, dated Mar. 31, 2009 (Dkt. 37)). Defendants argue in their motion that any state-law discrimination claims that Wali may be seeking to assert are not properly before this Court (*see* Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Mar. 31, 2009 ("Def. Mem.") (Dkt. 39), at 10–11), and that Wali's federal claims must fail on the grounds that (a) he has not established a *prima facie* case of discrimination, and (b) in any event, he has failed to offer evidence capable of showing that Defendants' reason for discharge was pretextual (*see id.*, at 7–10). Defendants additionally argue that Wali has failed to exhaust his claim of religious discrimination (*id.*, at 12–13), and that Cordero and Vidal cannot be held individually liable for any claim brought under Title VII (*id.*, at 11–12).

On April 28, 2009, Wali filed an opposition to Defendants' motion (*see* Dkt. 40), and, on May 14, 2009, Defendants' filed a reply (*see* Def. Reply Mem.).

### DISCUSSION

## I. SUMMARY JUDGMENT STANDARDS

### A. Rule 56

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and that the movant is entitled to judg-

---

5. As noted below (*see infra* at n. 7), Wali, who submitted a form pleading, also checked a box indicating that he had suffered discrimination based on unequal terms and conditions

of employment (*see* Am. Compl., at ¶ 4). The gravamen of his Amended Complaint, however, appears to be a challenge to his termination.

ment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Nonetheless, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading," but "must ... set out specific facts showing a genuine issue for trial." Fed. R.Civ.P. 56(e)(2). This means that "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (citing *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998)), but, rather, must present "significant probative evidence tending to support the complaint." *Smith v. Menifee,* No. 00 Civ. 2521(DC), 2002 WL 461514, at *3, 2002 U.S. Dist. LEXIS 4943, at *9 (S.D.N.Y. Mar. 25, 2002) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

Where the party opposing summary judgment is proceeding on a *pro se* basis, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks and citation omitted). Nonetheless, even a *pro se* plaintiff cannot defeat a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support summary judgment, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts. *See* Fed.R.Civ.P. 56(e)(2); *see also Jermosen v. Coughlin,* 877 F.Supp. 864, 867 (S.D.N.Y.1995) (in order to defeat summary judgment, a *pro se* plaintiff must present concrete evidence from which a reasonable jury could return a verdict in his favor).

In sum, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried" on the evidence presented. *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.–Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967); *accord Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). Where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. *Local Civil Rule 56.1*

■ Under this Court's rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). If the opposing party fails to respond to the moving party's Rule 56.1

Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003). *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

■ If the moving party seeks summary judgment against a *pro se* litigant, the moving party is also required to notify the *pro se* litigant of the requirements of Rule 56 and Local Civil Rule 56.1. Local Civ. R. 56.2. *Pro se* litigants are then not excused from meeting the requirements of Local Rule 56.1, *see Vt. Teddy Bear Co. v. 1–800–BEARGRAM Co.,* 373 F.3d 241, 246 (2d Cir.2004) (upholding Local Rules 56.1 and 56.2), although, where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions, *see Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001); *see also Johnson v. New York,* No. 04 Civ. 1070(DLI)(LB), 2007 WL 764514, at *6, 2007 U.S. Dist. LEXIS 17212, at *18–19 (E.D.N.Y. Mar. 9, 2007).

■ "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz,* 258 F.3d at 74. Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law. *Id.* Thus, the Court may not rely solely on the state-ment of undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that the moving party's assertions are supported by the record. *See Vt. Teddy Bear Co.,* 373 F.3d at 244; *see also Holtz,* 258 F.3d at 74; *Zerafa v. Montefiore Hosp. Hous. Co.,* 403 F.Supp.2d 320, 329 n. 12 (S.D.N.Y.2005). Summary judgment may only be granted where the Court is satisfied that the undisputed facts, as supported by the record, " 'show that the [movant] is entitled to a judgment as a matter of law.' " *Champion,* 76 F.3d at 486 (quoting Fed.R.Civ.P. 56(c)).

Here, Defendants served and filed a statement pursuant to Local Civil Rule 56.1, setting forth undisputed material facts, with citations to the record. In addition, the Defendants duly served and filed a statement pursuant to Local Civil Rule 56.2, apprising Wali of the potential consequences of not responding to the motion as required by the Rules. In response to the Defendants' motion, Wali submitted opposition papers containing a host of materials, including, *inter alia,* documents and pay records relating to his employment and that of another employee with OneSource. Wali, however, filed no statement pursuant to Local Civil Rule 56.1. Nonetheless, in light of Wali's *pro se* status, the Court has conducted an independent review of all of the evidence submitted by both parties, so as to ascertain whether the record actually reveals any material, disputed issues of fact.

## II. *DEFENDANTS' MOTION*

### A. *New York State Claims*

■ As an initial matter, Defendants argue that Wali, by bringing his claims before the NYSDHR, has elected his remedies and may not bring an action in federal court based on the same set of facts or

circumstances, pursuant to New York Executive Law § 297(9). (Def. Mem., at 10.) Subsection 279(9) provides that "a person claiming to be aggrieved by an unlawful discriminatory practice may seek relief either from a court of appropriate jurisdiction or from the [NYDHR] or any local commission on human rights, but not both." *Moguel v. Covenant House/New York*, No. 03 Civ. 3018(RWS), 2004 WL 2181084, at *9, 2004 U.S. Dist. LEXIS 19342, at *25–26 (S.D.N.Y. Sept. 29, 2004) (citing *Clements v. St. Vincent's Hosp. & Med. Ctr.*, 919 F.Supp. 161, 164 (S.D.N.Y. 1996)); *see* N.Y. Exec. Law § 297(9). This restriction "applies equally to [state human rights] claims brought in New York courts and to such claims brought as pendent claims in federal courts," but "does not affect claims brought under federal law." *Thomas v. N.Y. City Health and Hosps. Corp.*, No. 02 Civ. 5159(RJH), 2004 WL 1962074, at *1 n. 1, 2004 U.S. Dist. LEXIS 17694, at *2 n. 1 (S.D.N.Y. Sept. 1, 2004) (citation omitted).

Wali, however, does not appear to be asserting any state-law claims in his Amended Complaint, and his federal claims under Title VII are properly before this Court.

### B. *Title VII Claims*

#### 1. *The Applicable Burden–Shifting Framework*

Title VII provides that it shall be unlawful for an employer to "discriminate against an individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Employment discrimination claims brought under Title VII are analyzed under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) he was a member of the protected class; (2) he satisfactorily performed his duties; (3) the employer took an adverse employment action against him; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Id.*, at 802, 93 S.Ct. 1817; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

If the plaintiff makes this *"de minimus"* showing, *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001), a presumption of discrimination is created and the burden then shifts to the employer merely to articulate some legitimate, non-discriminatory reason for the adverse action taken against the plaintiff, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). The employer need not persuade the Court that the proffered reason was the actual reason for the adverse action; rather, the employer's burden is simply to rebut the plaintiff's *prima facie* case by clearly setting forth, "through the introduction of admissible evidence, the reasons for the [adverse action against the plaintiff]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

If the employer articulates such a reason, the presumption of discrimination disappears, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden then shifts to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for discrimination, *see Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. Thus, once the defendant has presented a non-discriminatory reason for its employment action, it is entitled to summary judgment "unless the plaintiff can point to evidence

that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000); *see St. Mary's Honor Ctr.*, 509 U.S. at 510–11, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 255–56, 101 S.Ct. 1089. The ultimate burden of proving that the defendant was intentionally discriminatory in its employment practices remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

A reason given by an employer for its action cannot be proven to be pretextual unless the plaintiff shows that the reason was false *and* that discrimination was "the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. 2742. At the summary judgment phase, the plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for the adverse action is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse decision." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir.1994) (emphasis in original).

■ The Court notes that an extra measure of caution is needed in awarding summary judgment to a defendant where, as in a discrimination case, intent is at issue. *Id.*, at 1224. An employer's records will rarely document the state of mind or motives of its decision-makers, and therefore materials "must be carefully scrutinized" for circumstantial evidence about the employer's state of mind and those factors that motivated the challenged action. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see*

*Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) ("[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation.").

### 2. *Wali's Claim of Discriminatory Termination*

#### a. *Failure to Establish a Prima Facie Case*

■ Wali alleges that he was terminated because of his race and color. (*See* Am. Compl., at ¶ 7; *see also* Weinberg Cert., Ex. G (Wali Dep.), at p. 25, l. 15–p. 26, l. 20.) There is no dispute that, as an African–American, he is a member of a protected class, and there is also no dispute that he suffered an adverse employment action when his job was terminated. Further, Defendants have not suggested that he failed to perform his job duties satisfactorily. Defendants, however, argue persuasively that Wali cannot make out a *prima facie* case of race or color discrimination because he cannot show that his discharge occurred under circumstances giving rise to an inference of such discrimination.

■■ A plaintiff may establish such an inference "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham*, 230 F.3d at 38–39; *see Abdu–Brisson*, 239 F.3d at 467; *Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir.1997). The plaintiff must then show that " '[he] was similarly situated in all material respects to the individuals with

whom [he] seeks to compare [himself].'" *Velez v. SES Operating Corp.,* No. 07 Civ. 10946(DLC), 2009 WL 3817461, at *8, 2009 U.S. Dist. LEXIS 106465, at *26–27 (S.D.N.Y. Nov. 12, 2009) (quoting *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir.2003)). While the question of whether two employees are similarly situated usually "presents a question of fact for the jury," *Graham,* 230 F.3d at 39, a court "can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n. 2 (2d Cir.2001).

In his opposition papers, Wali principally asserts that Defendants treated him less favorably than two Hispanic employees, Camacho and Carebello, by terminating his employment while continuing to employ them for a longer duration. (*See* Weinberg Cert., Ex. G (Wali Dep.), at p. 25, l. 15–p. 26, l. 20; *see* Def. Rule 56.1 Smt., at ¶ 14.) Wali, however, has not come forward with evidence capable of showing that, in being terminated, he was actually treated differently than the individuals he identifies or any other similarly-situated employees.

He has not, for example, produced a statement, in admissible form, of any witness with personal knowledge as to how long Camacho was employed by OneSource, or as to whether Carebello was employed at all. In the absence of such evidence, Wall's own professed beliefs— and his accounts of hearsay statements purportedly made to him by Camacho and Carebello—are insufficient to refute the content of OneSource's proffered employment records. As to Camacho, those records reflect that he and Wali were both hired as temporary vacation replacements and were both terminated, within days of each other, at the conclusion of their temporary assignments.

■ Nor has Wali proffered any other evidence that could suggest that, in terminating him, OneSource acted with a "discriminatory animus," such as evidence that he was subjected to harassment on the job. Although verbal comments may " 'constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff,' " *Galimore v. City Univ. of New York,* 641 F.Supp.2d 283-84 (S.D.N.Y.2009) (internal citation omitted), Wali testified that his primary contact at OneSource, Cordero, never made any discriminatory comments to him (*see* Weinberg Cert., Ex. G (Wali Dep.), at p. 81, l. 22–p. 82, l. 2). Indeed, Wali alleges in his Amended Complaint that Cordero—who generally gave him his work assignments—told him that he was being let go only because, otherwise, OneSource "would lose[ ] money." (Am. Compl, at ¶ 8; *see* Weinberg Cert., Ex. G (Wali Dep.), at p. 81, ll. 16–21.)

■ Finally, Wali's bare statements regarding the percentage of African–Americans employed by OneSource (*see* Pl. Opp. Mem., at 3) and his speculative argument regarding Camacho's supposedly higher rate of pay (*see id.,* attaching Camacho's employment record and payroll records) are insufficient on their face to raise an inference that Wali was terminated for discriminatory reasons.[6]

**6.** To the extent Wali's Amended Complaint is liberally construed to assert an unequal pay claim, he would again be required to show evidence of a discriminatory animus, in order to establish a *prima facie* case of discrimination. *See Simpri v. City of New York,* No. 00 Civ. 6712(SAS), 2003 WL 23095554, at *5, 2003 U.S. Dist. LEXIS 23266, at *17 n. 6 (S.D.N.Y. Dec. 29, 2003) (dismissing equal pay claim brought under Title VII); *Belfi v.*

In short, Wali has "identified no evidence, whether direct or circumstantial, that would permit a reasonable fact-finder to draw an inference that [his] discharge was the result of unlawful discrimination against [him]." *Velez*, 2009 WL 3817461, at \*9, 2009 U.S. Dist. LEXIS 106465, at \*28 (granting summary judgment where plaintiff failed to establish that Hispanic employees were treated less favorably than African American employees).

### b. *Lack of Evidence of Pretext*

■ Even assuming Wali were able to establish a *prima facie* case of race or color discrimination, his claims would be subject to dismissal because Defendants have provided a legitimate, non-discriminatory reason for discharging him, and Wali has not met his burden of presenting evidence sufficient for a jury to find that Defendants' proffered reason was a pretext for unlawful discrimination.

As already discussed, Defendants maintain that, as he well knew, Wali was hired as a temporary employee for the specific purpose of covering vacationing permanent employees and that he was terminated at the conclusion of his temporary assignment. (Def. Mem., at 8.) This proffered reason for Wall's termination meets Defendants' burden of coming forward with a legitimate, non-retaliatory reason for its action. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir.1999), *cert. denied*, 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960, (2000) (stating defendant's

burden of production is "not a demanding one," as it need only offer a non-discriminatory explanation to rebut plaintiff's *prima facie* case).

The burden thus shifts back to Wali to offer evidence which creates a triable issue of fact as to whether the legitimate reason proffered by Defendants for his discharge was a pretext for race or color discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. In opposing Defendants' summary judgment motion, Wali "can demonstrate pretext either with direct evidence of discrimination ... or with indirect or circumstantial evidence." *Higgs v. Columbia Univ.*, No. 05 Civ. 2642(DF), 2009 WL 77880, at \*15, 2009 U.S. Dist. LEXIS 3579, at \*48 (S.D.N.Y. Jan. 5, 2009); *see Burdine*, 450 U.S at 256, 101 S.Ct. 1089.

Wali, however, has made no showing that Defendants' proffered reason for his termination was pretextual. While Wali claims that Defendants' legal memorandum is "inaccurate" and that their counsel "have nothing but the same statements twisting and turning them over and over" (Pl. Opp. Mem., at 8), his opposition papers fail to address Defendants' stated reason for his discharge or to present evidence capable of showing that discrimination was "the real reason," *see St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. 2742. Accordingly, Defendants are entitled to summary judgment in their favor on Wali's Title VII claim that he was terminated because of his race or color.[7]

---

*Prendergast*, 191 F.3d 129, 135, 139–40 (2d Cir.1999) (affirming dismissal of Title VII wage claim where plaintiff could not establish an inference of discriminatory intent). Here, the wholly speculative nature of Wali's challenge to his pay in relation to Camacho's, coupled with the fact that the payroll records actually reflect that he and Camacho received the same hourly rate (*see supra* n. 4), cannot demonstrate circumstances giving rise to an inference of discrimination.

7. Although, in his Amended Complaint, Wali also alleges unequal terms and conditions of employment (Am. Compl., at ¶ 4; *see also supra* n. 5), it appears from his papers that, with the possible exception of a challenge to his pay in relation to Camacho's (*see supra* n. 6), the substance of Wali's discrimination claim is that he was unlawfully terminated from his position. Yet even if this Court were to liberally construe his pleading to include a claim that he was subjected to discriminatory

### 3. *Religious Discrimination*

Defendants argue that Wali's claim of religious discrimination should be dismissed because Wali did not raise such a claim in his administrative complaint with the EEOC. (*See* Def. Mem., at 12–13.) A court has jurisdiction to hear Title VII claims only if the claims have been raised before the EEOC or if they are "reasonably related to those that were filed with the agency." *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001)). A claim is considered reasonably related to an EEOC charge if (1) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, (2) the plaintiff alleges retaliation by an employer for filing an EEOC charge, or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *See Butts v. N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1402–03 (2d Cir.1993).

The "reasonably related" exception to the exhaustion requirement " 'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.' " *Deravin,* 335 F.3d at 201 (quoting *Butts,* 990 F.2d at 1402); *Perez v. New York & Pres-*

*byterian Hosp.,* No. 05 Civ. 5749(LBS), 2009 WL 3634038, at *8, 2009 U.S. Dist. LEXIS 102139, at *26–27 (S.D.N.Y. Nov. 3, 2009). "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.' " *Deravin,* 335 F.3d at 201 (quoting *Freeman v. Oakland Unified Sch. Dist.,* 291 F.3d 632, 637 (9th Cir.2002).) "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Jiggetts v. Diaz,* No. 02 Civ. 8959(LTS)(JCF), 2009 WL 749575, at *6, 2009 U.S. Dist. LEXIS 22638, at *20 (S.D.N.Y. Mar. 20, 2009) (quoting *Williams v. N.Y. City Hous. Auth.,* 458 F.3d 67, 70 (2d Cir.2006)).

Wali's allegation of religious discrimination appears for the first time in his filings with this Court. While he concedes that he did not raise a claim of claim of religious discrimination in his administrative complaint (Weinberg Cert., Ex. G (Wali Dep.), at p. 44, ll. 8–15 ("there's nothing to say that I'm Al–Islam on the complaint")), Wali maintains that his name itself showed that he is Muslim and that this was sufficient to alert the EEOC to his claim (*id.,* at p. 41, ll. 17–25; p. 43, l. 7– p. 44, l. 7).

Yet the mere fact that Wali's name may appear to be a Muslim name, and that it was listed on his administrative complaint, was insufficient to give the

employment terms or conditions, any such claim would necessarily fail for the same reasons discussed above. *See Robertson v. Trs. of Columbia Univ.,* 08 Civ.1913(LAP), 2009 WL 3425647, at *5, 2009 U.S. Dist. LEXIS 99446, at *16–17 (S.D.N.Y. Oct. 20, 2009) (granting summary judgment on Title VII claim challenging the plaintiff's terms and conditions of employment, where plaintiff was unable to

establish a *prima facie* case of discrimination); *McGullam v. Cedar Graphics, Inc.,* No. 04 Civ. 2891(DRH)(AKT), 2008 WL 3887604, at *7–8, 2008 U.S. Dist. LEXIS 65391, at *21–22 (E.D.N.Y. Aug. 20, 2008) (granting summary judgment on such a claim where the record was devoid of any evidence that the plaintiff was treated unfairly).

EEOC adequate notice to investigate a claim of religious discrimination. The factual allegations listed in that complaint made no reference to his religion. (See NYSDHR Complaint, at 1 ("I am Black and because of this, I have been subjected to unlawful discriminatory actions.").) An investigation of charges of discriminatory action based upon race would not necessarily result in an investigation into discrimination based on religion. See Jiggetts, 2009 WL 749575, at *6–7, 2009 U.S. LEXIS 22638, at *21 (finding plaintiff's claims of retaliation and religious discrimination were not reasonably related to her subsequent claims of race, national origin or disability); McLean–Nur v. Dep't of Transp., No. 98 Civ. 819(NRB), 2000 WL 297176 at *4–5, 2000 U.S. Dist. LEXIS 3495 at *13–14 (S.D.N.Y. Mar. 21, 2000) (finding plaintiff's claims of religious and gender discrimination were not reasonably related to his EEOC charges of race, age and disability discrimination); Richards v. N.Y. City Police Dep't, et al., 1999 WL 33288, at *6–7, 1999 U.S. Dist. LEXIS 722, at *17–21 (S.D.N.Y. Jan. 25, 1999) (religious discrimination claim barred because it was not reasonably related to plaintiff's EEOC charges of retaliation, sex and race discrimination); Muhammad v. N.Y. City Transit Auth., 450 F.Supp.2d 198, 206 (E.D.N.Y.2006) (stating that "this Court is unaware of any cases which have held a claim of race discrimination to be 'reasonably related' to a claim of religious discrimination").

As Wali has not come forward with evidence from which a rational trier of fact could find that his allegations of religious discrimination are reasonably related to his claims of discrimination based on his race and color, Defendants' are entitled to dismissal of the religious discrimination claim.

### 4. *Claims Against Cordero and Vidal*

 Finally, defendants Cordero and Vidal are entitled to the dismissal of any Title VII claims asserted against them in their individual capacities, as the statute does not provide for such individual liability. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir.1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); accord, Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir.2004).

### *CONCLUSION*

For all of the foregoing reasons, Defendants' motion for summary judgment (Dkt. 37) is granted in its entirety. The Clerk of the Court is directed to close this case on the Court's docket.

SO ORDERED.